FILED
IN CLERK'S OFFICE

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

2005 FEB -4  P 3:42

| | |
|---|---|
| DUNKIN' DONUTS INCORPORATED, a Delaware Corporation, THIRD DUNKIN' DONUTS REALTY, INC., a Massachusetts Corporation, <br><br> Plaintiffs, <br><br> v. <br><br> LEEMOND, INC., a Massachusetts Corporation, MICHAEL E. DILLON, a Citizen and Resident of Massachusetts, SUSAN L. KOSS, a Citizen and Resident of Massachusetts, <br><br> Defendants. | 05 CV 10233 MEL <br><br> MAGISTRATE JUDGE MBB <br><br> C.A. No. <br><br> RECEIPT # _____ <br> AMOUNT $ 150 <br> SUMMONS ISSUED ___ yes ___ <br> LOCAL RULE 4.1 _____ <br> WAIVER FORM _____ <br> MCF ISSUED _____ <br> BY DPTY CLK _____ <br> DATE 2/4/05 |

## COMPLAINT

This is an action for fraud, breach of contract, and trademark infringement based on the operation of a Dunkin' Donuts franchise by Defendants Leemond, Inc., Michael E. Dillon and Susan L. Koss ("Defendants"). Plaintiffs Dunkin' Donuts Incorporated and Third Dunkin' Donuts Realty, Inc. (collectively, "Dunkin'") seek monetary, injunctive, and other relief against Defendants for the reasons set forth below.

### The Parties

1.  Plaintiff Dunkin' Donuts Incorporated is a Delaware corporation with its principal place of business at 130 Royall Street, Canton, MA 02021. It is engaged in the business of franchising independent business persons to operate "Dunkin' Donuts" shops throughout the United States. Dunkin' Donuts franchisees are licensed to use trade names, service marks, and

trademarks of Dunkin' Donuts and to operate under the Dunkin' Donuts system, which involves the production, merchandising, and sale of donuts and related products utilizing a specially designed building with special equipment, equipment layouts, interior and exterior accessories, identification schemes, products, management programs, standards, specifications, proprietary marks and identification.

2. Plaintiff Third Dunkin' Donuts Realty, Inc. ("Dunkin' Realty") is a Massachusetts corporation with its principal place of business at 130 Royall Street, Canton, Massachusetts 02021. Dunkin' Realty is a wholly-owned subsidiary of Dunkin' Donuts Incorporated and is engaged in the business of leasing properties to Dunkin' Donuts franchisees to enable Dunkin' to franchise independent business persons to operate Dunkin' Donuts shops at those locations. Dunkin' Realty is the successor in interest to Dunkin' Donuts of Massachusetts, Inc. by reason of merger and name change as of May 1, 1994.

3. Defendant Leemond, Inc. is a Massachusetts corporation with its principal place of business at 645 Bridge Street, N. Weymouth, Massachusetts 02191. At all times relevant to this Complaint, Defendant Leemond, Inc. was the owner and operator of a Dunkin' Donuts shop located at 645 Bridge Street, N. Weymouth, Massachusetts 02191 (the "Defendants' Shop"), and a Dunkin' franchisee for the shop pursuant to a Franchise Agreement dated July 1, 1993 (the "Franchise Agreement").

4. Defendant Michael E. Dillon is a citizen and resident of the Commonwealth of Massachusetts. Defendant Dillon was the owner and operator of Defendants' Shop and a Dunkin' franchisee pursuant to the Franchise Agreement. Defendant Dillon is an officer and shareholder of Leemond, Inc. and executed a Personal Guarantee pursuant to which he promised to personally perform and be bound by the provisions of the Franchise Agreement.

5. Defendant Susan L. Koss is a citizen and resident of the Commonwealth of Massachusetts. Defendant Koss was the owner and operator of Defendants' Shop and a Dunkin' franchisee pursuant to the Franchise Agreement. Defendant Koss is an officer and shareholder of Leemond, Inc., and executed a Personal Guarantee pursuant to which she promised to personally perform and be bound by the provisions of the Franchise Agreement.

## Venue and Jurisdiction

6. This Court has jurisdiction pursuant to §§ 34(a) and 39 of the Lanham Act, 15 U.S.C. §§ 1116(a) & 1121; and 28 U.S.C. §§ 1331, 1338, and 1367. The amount in controversy exceeds $75,000, exclusive of costs and interest.

7. Venue is properly in this District pursuant to 28 U.S.C § 1391(b).

8. This Court has *in personam* jurisdiction over the Defendants because they are residents and citizens of this District, they conduct business in this District, and the events giving rise to the claims occurred in this District.

## Background Facts

## Dunkin's Proprietary Marks

9. Dunkin' is the franchisor of the Dunkin' Donuts franchise system.

10. Dunkin's wholly-owned subsidiary Dunkin' Donuts USA, Inc. is the owner of the trademark, service mark, and trade name "Dunkin' Donuts," and related marks. Dunkin' Donuts has the exclusive license to use and license others to use these marks and trade name and has used them continuously since approximately 1960 to identify its doughnut shops, and the doughnuts, pastries, coffee, and other products associated with those shops.

11. Dunkin' Donuts USA, Inc. owns numerous federal registrations for the mark Dunkin' Donuts, and related marks. Among those registrations are Registration Nos. 748,901,

3

1,148,165, and 1,159,354. Each of these registrations is in full force and effect, and is incontestable pursuant to 15 U.S.C. § 1065.

12. The trade dress of Dunkin' shops includes the signage, lettering style, pink and orange color scheme, exterior appearance, mansard roof, floor plans, and decor (including without limitation, doughnut cases, menu boards, display racks, and servers' uniforms) that are featured at Dunkin' Donuts shops operated by Dunkin' licensees.

13. The Dunkin' trade dress consists of arbitrary embellishments primarily adopted for the purpose of identification and individuality, and is nonfunctional.

14. The Dunkin' trademarks and trade dress are utilized in interstate commerce.

15. Dunkin' and its franchisees currently operate approximately 4,100 shops in the United States and 1,800 outside the United States. Dunkin' Donuts shops feature Dunkin' Donuts' distinctive trade dress, including pink and orange color scheme, signage, menu boards, product selection and names, interior design, and doughnut cases. In the over fifty years since the Dunkin' Donuts system began, hundreds of millions of customers have been served in Dunkin' Donuts shops.

16. The Dunkin' Donuts marks have been very widely advertised and promoted by Dunkin' Donuts over the years. Dunkin' Donuts and its franchisees have expended approximately $875,000,000 in advertising and promoting the Dunkin' Donuts marks over the last twenty-nine years. Dunkin' Donuts spent approximately $94,000,000 in fiscal year 2000 alone on advertising and promotion.

17. As a result of the extensive sales, advertising, and promotion of items identified by the Dunkin' Donuts marks, the public has come to know and recognize the Dunkin' Donuts marks, and to associate them exclusively with the products and services offered by Dunkin' and

its franchisees. The Dunkin' Donuts marks are among the best and most widely known trademarks in the United States today, and are assets of inestimable value to Dunkin' Donuts, representing and embodying Dunkin's goodwill and favorable reputation.

### The Parties' Rights and Obligations Under the Franchise Agreement

18. The Defendants were licensed to use the Dunkin' Donuts trademarks, trade name, and trade dress in accordance with the terms of their Franchise Agreement.

19. Under the terms of the Franchise Agreement, Defendants agreed to do certain things, including the following:

   a. not to do or perform, directly or indirectly, any act injurious or prejudicial to the good will associated with Dunkin' Donuts' proprietary marks and the Dunkin' Donuts system (Paragraph 8.A.1);

   b. to comply with all applicable laws, rules, regulations, ordinances, and orders of public authorities (Paragraph 5.Q);

   c. to pay Dunkin' Donuts a franchise fee of 4.9 percent of the gross sales of the business (Paragraph 4.E);

   d. to pay an advertising fee of 5 percent of the gross sales of the Dunkin' Donuts shops to the Dunkin' Donuts Franchise Owners Advertising and Sales Promotion Fund and to make additional payments to the Fund as supported by a majority of producing Dunkin' Donuts shops in Defendants' market (Paragraph 4.F);

   e. to accurately report on an approved form each week gross sales for the preceding calendar week, at which time all fees required to be paid were to be remitted (Paragraph 5.H.1);

   f. to keep full, complete, and accurate books and accounts in accordance

with generally accepted accounting principles and in a form and manner as may be prescribed by Dunkin' Donuts (Paragraph 5.H);

  g. to make available for inspection at reasonable times all original books, records, and supporting documents that may be necessary to verify gross sales (Paragraph 6.C);

  h. to ring and record all sales on a cash register, including retail, wholesale, bulk discount sales, and sales for which payment may be deferred, at the time the product is delivered to the purchaser (Paragraph 5.I);

  i. to preserve for a period of three years all accounting records and supporting documents relating to the operation of the Dunkin' Donuts shop (Paragraph 5.H.5);

  j. to pay the cost and expense, including reasonable accounting and legal fees, of any inspection, examination, or audit necessitated by a failure to prepare, deliver, or preserve statements or records required by the Agreement, or if such inspection discloses a discrepancy in the gross sales reported to Dunkin' Donuts (Paragraph 6.C); and

  k. to pay interest on unpaid monies due under the Agreement (Paragraph 9.C.1).

  20. Under Paragraph 8.A of the Agreements, Defendants agreed that they would not do certain things during the term of the Franchise Agreement, including the following:

  a. divert or attempt to divert any business or customer of the Dunkin' Donuts shop to any competitor, by direct or indirect inducement or otherwise, or do or perform, directly or indirectly, any other act injurious or prejudicial to the goodwill associated with Dunkin' Donuts' Proprietary Marks and the Dunkin' Donuts System (Paragraph 8.A.1.); or

  b. own, maintain, engage in, be employed by, or have any interest in any

other business which is within five miles of any Dunkin' Donuts shop and which sells or offers to sell any product of a type offered by a Dunkin' Donuts shop (Paragraph 8.A.3).

21. The Franchise Agreement executed by the Defendants also contains acknowledgments and agreements by the Defendants concerning the continued use of Dunkin's proprietary marks or any methods associated with the name "Dunkin' Donuts" after the termination of the Franchise Agreement. The relevant sections include:

    a. Section 7.A: FRANCHISEE acknowledges that "DUNKIN' DONUTS" is a registered trademark, that said mark has been and is being used by DUNKIN' DONUTS and by its FRANCHISEES and licensees, that said mark, together with the other PROPRIETARY MARKS, presently owned by DUNKIN' DONUTS or which may be acquired in the future, constitutes part of the DUNKIN' DONUTS SYSTEM and that valuable goodwill is associated with and attached to said mark and the other PROPRIETARY MARKS. FRANCHISEE agrees to use said mark and the other PROPRIETARY MARKS only in the manner and to the extent specifically licensed by the Agreement. FRANCHISEE further agrees that any unauthorized use or continued use after the termination of this Agreement shall constitute irreparable harm subject to injunctive relief.

    b. Section 9.F and 9.F.2: Upon any termination or expiration of this Agreement . . . FRANCHISEE shall immediately cease to use, by advertising or in any other manner whatsoever, any methods associated with the name "DUNKIN' DONUTS", any or all of the PROPRIETARY MARKS and any other trade secrets, confidential information, operating manuals, slogans, signs, symbols or devices forming part of the DUNKIN' DONUTS SYSTEM or otherwise used in connection with the operation of the DUNKIN' DONUTS SHOP. FRANCHISEE agrees that any unauthorized use or continued use after the termination of this Agreement shall constitute irreparable harm subject to injunctive relief.

22. Defendants agreed they would pay to Dunkin' Donuts all damages with interest, costs and expenses, including attorneys' fees, incurred by reason of any termination of the Franchise Agreement. (Paragraph 9.C.2.)

### The Shop Lease

23. On or about July 1, 1993, Defendants entered into a lease with Dunkin' Donuts of Massachusetts, Inc. for Defendants' Shop (the "Lease").

7

24. The Lease requires Defendants to pay the amount by which twelve percent (12%) of gross sales exceeds the amount of base rent paid or payable during the lease year. (Lease Paragraph 4(a).) The Lease also requires Defendants to furnish a statement of gross sales. (Lease Paragraph 6.)

25. The Lease also provides that Dunkin' Realty has the right to terminate the Lease if the Franchise Agreement is terminated for any reason. (Lease Paragraph 15(a).) The Lease also provides, "upon termination of this LEASE, the LESSOR may enter upon the PREMISES and repossess the same, and expel the LESSEE and those claiming under it . . . . In the case of any such termination, the LESSEE will indemnify the LESSOR against all loss or damage suffered by reason of the termination . . . ." (Lease Paragraph 19(e).)

## Defendants' Defaults and Termination

26. An investigation of Defendants' Shop revealed that Defendants maintained undisclosed wholesale relationships with at least three customers. One of these undisclosed customers was a competitor of Dunkin', located within a half mile of another Dunkin' franchisee.

27. Defendants failed to ring these wholesale sales into the register and to properly report them to Dunkin'.

28. By failing to accurately report these sales as part of their gross sales to Dunkin', Defendants evaded payment of franchise fees and advertising fees owed under the Franchise Agreement, as well as the percentage rent owed pursuant to the Lease.

29. Defendants' actions constitute a violation of the in-term covenant not to compete.

30. Defendants also failed to maintain accurate financial records.

31. When Dunkin' confronted Defendant Dillon, he admitted in a letter to Dunkin' that Defendants had failed to report these sales.

32. Defendants' acts constitute breaches of Franchise Agreement and Lease, warranting termination.

33. Accordingly, pursuant to the applicable provisions of the Franchise Agreement, on January 18, 2005, Dunkin' sent Defendants a Notice of Default and Termination immediately terminating the Franchise Agreement and the Lease, and requesting that Defendants comply with their post-termination obligations as set forth in the Franchise Agreement and the Lease.

34. To date, Defendants have refused to accept termination and continue to operate their shop as if they were licensed franchisees.

## COUNT I
### (Breach of Contract-Franchise Agreement)

35. The allegations of Paragraphs 1 through 34 are hereby incorporated by reference.

36. The conduct described above constitutes breaches of the contractual provisions of the Franchise Agreement described in paragraph 19.

37. These breaches constitute grounds for terminating the Franchise Agreement.

38. As a result of Defendants' actions, Dunkin' has suffered and is continuing to suffer irreparable injury, and has incurred and is continuing to incur monetary damage in an amount that has yet to be determined.

## COUNT II
### (Breach of Contract-Franchise Agreement)

39. The allegations of paragraphs 1 through 38 are hereby incorporated by reference.

40. The conduct described above constitutes breaches of the contractual provisions of the Franchise Agreement described in paragraph 20.

41. These breaches constitute grounds for terminating the Franchise Agreement.

42. As a direct and proximate result of these breaches, Dunkin' has suffered and is continuing to suffer irreparable injury, and has incurred and continues to incur substantial losses, fees, and expenses.

43. As a result of Defendants' actions, Dunkin' has suffered and is continuing to suffer irreparable injury, and has incurred and is continuing to incur monetary damage in an amount that has yet to be determined.

## COUNT III
### (Breach of Contract-Franchise Agreement)

44. The allegations of paragraphs 1 through 43 are hereby incorporated by reference.

45. Pursuant to the applicable provisions of the Franchise Agreement, Dunkin' sent a Notice of Default and Termination to Defendants, which terminated the Franchise Agreement, and has demanded that the Defendants immediately cease operating as Dunkin' Donuts franchisees, cease using Dunkin' Donuts' proprietary marks, pay all monies owed, and comply with all of their post-termination obligations.

46. Defendants have failed to cease operating under the Dunkin' Donuts trademarks, trade name, and trade dress, and have failed to comply with their post-termination obligations under the Franchise Agreement.

47. As a result of Defendants' actions, Dunkin' has suffered and is continuing to suffer irreparable injury, and has incurred and is continuing to incur monetary damage in an amount that has yet to be determined.

## COUNT IV
## (Breach of Contract - The Lease)

48. The allegations of paragraphs 1 through 47 are hereby incorporated by reference.

49. The conduct described herein constitutes breaches of the contractual obligations and agreements contained in the Lease.

50. These breaches constitute grounds for terminating the Lease.

51. As a result of Defendants' actions, Dunkin' Realty has suffered and is continuing to suffer irreparable injury, and has incurred and is continuing to incur monetary damage in an amount that has yet to be determined.

## COUNT V
## (Breach of Contract – The Lease)

52. The allegations of paragraphs 1 through 51 are hereby incorporated by reference.

53. Pursuant to the applicable provisions of the Lease, Dunkin' sent a Notice of Default and Termination to Defendants, which terminated the Lease and demanded that the Defendants immediately quit the premises, deliver up possession thereof, and comply with their post-termination obligations under the Lease.

54. Defendants have failed to deliver the premises and to comply with their post-termination obligations under the Lease.

55. As a result of Defendants' actions, Dunkin' Realty has suffered and is continuing to suffer irreparable injury, and has incurred and is continuing to incur monetary damage in an amount that has yet to be determined.

## COUNT VI
## (Trademark Infringement)

56. The allegations of paragraphs 1 through 55 are hereby incorporated by reference.

57.     Defendants' use of the Dunkin' Donuts trademarks, trade name, and trade dress outside the scope of the Franchise Agreement is likely to confuse or deceive the public into believing, contrary to fact, that their shop is licensed, franchised, sponsored, authorized, or otherwise approved by Dunkin', or is in some other way connected or affiliated with Dunkin'. Such unlicensed use infringes Dunkin's exclusive rights in the Dunkin' Donuts trademarks under § 32 of the Lanham Act, 15 U.S.C. § 1114.

58.     Defendants' acts were done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive.

59.     As a result of Defendants' actions, Dunkin' has suffered and is continuing to suffer irreparable injury, and has incurred and is continuing to incur monetary damage in an amount that has yet to be determined.

### COUNT VII
### (Trade Dress Infringement)

60.     The allegations of paragraphs 1 through 59 are hereby incorporated by reference.

61.     Defendants' shop is identified by signs, exterior appearance, packaging, containers, and other items on which the words "Dunkin' Donuts" appear in the same "frankfurter" lettering style and in the same distinctive pink and orange color scheme as Dunkin' uses for the doughnut shops operated by Dunkin's licensees.

62.     Defendants' use of the trade dress that is identical or confusingly similar to Dunkin's trade dress constitutes a false designation of the origin of Defendants' Shop, which is likely to cause confusion, or to cause mistake, or to deceive the public as to the affiliation, connection, or association of Defendants' Shop with the Dunkin' shops operated by Dunkin' licensees. Such adoption of Dunkin's trade dress violates § 43 of the Lanham Act, 15 U.S.C. § 1125, and the common law.

63. Defendants' acts were done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive.

64. As a result of Defendants' infringement of Dunkin's trade dress, Dunkin' has suffered and is continuing to suffer irreparable injury, and has incurred and is continuing to incur monetary damage in an amount that has yet to be determined.

### COUNT VIII
### (Unfair Competition)

65. The allegations of paragraphs 1 through 64 are hereby incorporated by reference.

66. The Defendants' use of the Dunkin' Donuts trademarks, trade name, and trade dress outside the scope of their Franchise Agreement is likely to cause confusion, or to cause mistake, or to deceive as to the origin, sponsorship, or approval of their goods, services, or commercial activities. Such continued unauthorized use of the Dunkin' Donuts trademark and trade name violates § 43 of the Lanham Act, 15 U.S.C. § 1125(a).

67. Defendants' acts were done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive.

68. As a result of Defendants' actions, Dunkin' has suffered and is continuing to suffer irreparable injury, and has incurred and is continuing to incur monetary damage in an amount that has yet to be determined.

### PRAYER FOR DAMAGES, INJUNCTIVE, AND OTHER RELIEF

WHEREFORE, Dunkin' prays that this Court:

A. Enter judgment in favor of Dunkin' for the damages incurred as a result of Defendants' breaches of the Franchise Agreement and the Lease;

B. Enter an injunctive Order ratifying and enforcing the termination of the Franchise Agreement and the Lease *nunc pro tunc*;

C.  Enter an Order directing Defendants to comply with their post-termination obligations under any contract between or among the parties, including but not limited to the Franchise Agreement and the Lease;

D.  Enter an Order directing Defendants to account to Dunkin' for all sales made and receipts earned during the term of the franchise relationship;

E.  Award Dunkin' judgment against Defendants for the damages it has sustained and the profits Defendants have derived as a result of their trademark infringement, trade dress infringement, and unfair competition, that such damages be assessed in a separate accounting procedure and trebled in accordance with § 35 of the Lanham Act, 15 U.S.C. § 1117;

F.  Enter an Order enjoining Defendants, and all those acting in concert with them, by preliminary and permanent injunction, from using the Dunkin' Donuts trademarks, trade name, and trade dress, and from otherwise engaging in unfair competition with Dunkin';

G.  Award Dunkin' prejudgment interest in accordance with § 35 of the Lanham Act, 15 U.S.C. § 1117;

H.  Award Dunkin' its costs and attorneys' fees incurred in connection with this action pursuant to contract and § 35 of the Lanham Act, 15 U.S.C. § 1117, including the costs incurred in conducting any and all inspections and audits; and

I. Award Dunkin' such other relief as this Court may deem just and proper.

Respectfully submitted,

*Donna Brewer Mackenna*
Robert A. Murphy (Bar No. 363700)
Donna Brewer Mackenna (Bar No. 545254)
Casner & Edwards, LLP
303 Congress Street, 2nd Floor
Boston, Massachusetts 02110
(617) 426-5900

Robert L. Zisk
David E. Worthen
Amanda K. Grace
Schmeltzer, Aptaker & Shepard, P.C.
2600 Virginia Avenue, N.W.
Suite 1000
Washington, D.C. 20037
(202) 333-8800

Attorneys for Plaintiffs
Dunkin' Donuts Incorporated
and Third Dunkin' Donuts Realty, Inc.

Dated: February 4, 2005